IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAMELA BROWNER-WHITE** : | CIVIL ACTION | |
| *Plaintiff,* : | | |
| : | | |
| v. : | No. | 20-753 |
| : | | |
| **MARMAXX OPERATING** : | | |
| **CORPORATION** : | | |
| **d/b/a MARSHALLS, et al.,** : | | |
| *Defendants.* : | | |

## **MEMORANDUM**

**KENNEY, J.**                                                                                           February 26, 2021

When art becomes artifice, credible becomes questionable. Or, in the words of the inimitable Perry Bechtle, a litigator's simple secret for success is "100 percent wool."

Sacchetta and Baldino sued Marmaxx Operating Corporation, D/B/A Marshalls in the Philadelphia Court of Common Pleas, and Fowler, Hirtzel timely removed to Federal Court on the basis of diversity jurisdiction. The Complaint alleged Plaintiff was injured when a mirror she was inspecting in anticipation of a purchase came down on her toe, and further pointedly alleged that, "Defendants were in the exclusive ownership, management, possession, care, custody, and control of the premises located at 1745 South Easton Road, Doylestown, PA

1

18901. Defendants were negligent in maintaining the property that was within the care, custody, and control of the defendants." And, "on or about January 1, 2017 plaintiff…was caused serious bodily injury as a result of a defective condition located on defendants' premises, i.e. defective, improperly maintained shelving and/or product display." Not once in the body of the Complaint does it reference Marshalls as the location of the accident, it references the premises located at 1745 South Easton Road. The focus was on the premises and, later in the notice of deposition of the corporate designee, on the exact spot on the premises "subject to this litigation," and in the Rule 26 (f) Report, specifically, "MarshallsHomeGoods."

Marshalls versus HomeGoods subsequently was made an issue by Fowler, Hirtzel, when it produced a designee not for defendant Miramaxx, but for Marshalls. The created issue of Marshalls versus HomeGoods, however, on this record is nothing more than a red herring and made an issue unnecessarily—for what reason we are left to speculate—because Miramaxx, which operates MarshallsHomeGoods as a combo, mega store under one umbrella at 1745 South Easton Road, has always accepted responsibility for the premises.

Now to the average reader of this Complaint, knowing nothing at all about the case, the case seems clear enough. The Plaintiff was injured by the Defendants on property it maintained at 1745 South Easton Road by a defective condition,

notably in the shelving or product display.  It also can be assumed, although it need not be for our purposes here, that defense counsel must have had access to the claim's file early on in this case, so they knew far more detail than what was in the Complaint.

Fast forward to the Joint Report of Rule 26 (F) Meeting and Proposed Discovery Plan filed on April 28, 2020 (10 months ago), in which Sachetta and Baldino indicate that "a mirror fell onto her foot while she was shopping at the **Marshalls HomeGoods** store (singular) (parenthetical added) located at 1745 S. Easton Road…"  To which Fowler, Hirtzel responded "Defendant, Marmaxx Operating Corp. leased the premises and operated a store therein."  (Notably the admission that Mirmaxx operated "a" store in the context of a **MarshallsHomeGoods** combo store.)  Fowler, Hirtzel made no distinction between Marshalls and HomeGoods and did not raise any distinction as a liability issue, all in the context that they knew a mirror allegedly fell on the toe.  They also do not note that Miramaxx operated two stores on the premises and it is still a matter of discovery where exactly and in which store the accident occurred.  One can note here also, that by now Fowler, Hirtzel had access to the claims file as to whether the incident occurred in the Marshalls area of the combo store or the HomeGoods.  One can further note that even to the casual Division Three shopper, when you walk into one of these combo stores, there is no tape on the floor

indicating where Marshalls begins and HomeGoods ends.  And, the idea is genius, of course, because you want the person buying the mirror not to make the distinction, you want them thinking, "While I am here let me stroll over to the clothing section and see the mark downs on yesteryear's designer active wear I will look good in when I look in my new mirror."  You do not want them walking in and out of doors or searching for the right cash register.  You want to capture it all, and all at once.  Now if you put a pop quiz to the Division Three shopper and asked, "Now what part of the store would the mirror to be purchased be in, the HomeGoods side or the Marshalls side?  Hint: it is a mirror for the *home*, as opposed to that cool Dior shirt to wear out to the party."  What do you think the answer would be?  In fact, I would think a person who never stepped foot in a store would get this one right.  Sachetta and Baldino in the Rule 26(f) referencing **MarshallsHomeGoods** indicated they would need depositions of the corporate designees.

    Let the games begin.  Fowler, Hirtzel filed a Motion *in Limine* on January 26, 2021 and then a bevy of them on February 12, one of which, ECF 28, sought to preclude the "Irrelevant Spence Testimony" of its own witness Diane Spence, a plaintiff-deposed corporate designee chosen by Miramaxx to testify on behalf of Miramaxx and deposed by Sachetta, Baldino.  She said in her deposition, "I work for Marmaxx, but my employer is Marshalls."  On February 15, Baldino filed a

motion to preclude the "Unidentified HomeGoods Corporate Representative" that the Defendant indicated in its pre-trial it intended to call on behalf of Miramaxx rather than call Diane Spence.

On October 2, 2020, Fowler, Hirtzel took the deposition of the Plaintiff at 10:45 AM, where from the outset she indicated she went to the HomeGoods store with her daughter "to get one of those large mirrors." Fowler, Hirtzel then questioned the Plaintiff specifically referencing only her presence in the "HomeGoods" store. It appears that in 99 pages of testimony the word "Marshalls" is not used by either Fowler, Hirtzel or Plaintiff, the focus was always "HomeGoods." Tellingly, Fowler, Hirtzel did not at all seem surprised at the HomeGoods reference and did not seek to clarify HomeGoods versus Marshalls side of the store, or try to even distinguish the two. The much to do that Fowler, Hirtzel makes about the "d/b/a Marshalls" is a distinction without a difference. The suit did not require a d/b/a or even an amendment of the caption because as early as the 26(f) Report Miramaxx admitted it was the responsible party should negligence be determined.

On the afternoon after the morning in which the Plaintiff was deposed, Diane Spence was produced by Miramaxx to testify as the corporate designee for the Defendant and at the outset it was said to her, "I am going to ask you….about …..your employment with HomeGoods….." To which she promptly and most

pointedly responded, "Okay. First of all, I don't work for HomeGoods, I work for Marshalls." At the time of her deposition, Ms. Spence did not work at the Marshalls location, the location that is the subject of litigation. She is now working at a standalone Marshalls and not one like Doylestown, which is a combo store, what Miramaxx calls a "mega store." The responses that followed from Miramaxx's witness, Ms. Spence, were an amalgam of 26 pages of generalities and "I don't know because I did not work on the HomeGoods side of the store even though I work for Mirmaxx, and HomeGoods is under the Mirmaxx umbrella but I am employed at Marshalls." You would think defense counsel would have straightened that out before the deposition and brought someone in to testify for its client that had relevant information pursuant to the notice of deposition.

    Now, anyone looking at this record and the nature of the case would at this point turn to Fowler, Hirtzel and say, "what am I missing here?" You know what this case is about and you designate someone from your clothes side of the store; since we are talking then about "a" store and "a" store we identified as "MarshallsHomeGoods" as early as the 26 (f) and a mirror doing the damage and you have access to the claims and investigative file regarding the incident that the Plaintiff just testified to, did you also bring someone then who speaks to the HomeGoods policies on its side of "a" store? What is this shell game? What game are we playing here? By the way, having been armed with this Notice since

September 17, did you make any inquiry to clarify any confusion? Because we certainly would not waste everyone's time deposing someone you designated who you would then represent later to the Court had no information relevant to the subject of this litigation and should not be allowed to testify.

How did it come about that Diane Spence was produced as the designated witness for the defendant Marmaxx? And why would Marmaxx identify someone as their witness to call and represent it and its policies who knew nothing about HomeGoods, even though the incident involved a mirror crashing down on a toe at MarshallsHomeGoods? This seems a bit too clever, cumbersome, time consuming, costly, inefficient, and evasive, especially considering that The Notice of Deposition listed the designee(s) as Marmaxx Operation Corp d/b/a Marshalls and contained targeted and very specific items of testimony and indicated, "The designee shall have knowledge and information, and shall be able to testify, regarding policies and procedures and protocols regarding the following: Inspection, maintenance and repair of the shelving and display units *situated in defendants retail store which is the subject of this litigation.*" (emphasis added). This notice was sent on September 17, 2020, five months after the 26 (f) Report, so the suggestion by Fowler, Hirtzel that they only were apprised of the HomeGoods location of the accident during the Plaintiff's deposition that same morning is hard, if not impossible, to swallow. Furthermore, if Miramaxx, needed a different

representative to testify at trial to explain policies at "the plaintiff's store which is the subject of this litigation," or more than one, they needed to have brought a representative to the deposition whose testimony could be used at trial. Should then that representative not be available, or when "an unnamed representative" was called to testify, he or she could be confronted with the deposed designee's testimony. Indeed, after all the pre-trial is now done, and the case is trial ready, a representative, presumably of Miramaxx that works on the HomeGoods side, has still not been identified. Incredibly, Fowler, Hirtzel filed a motion *in limine* to preclude their own corporate designee, Diane Spence, who they produced on this record to testify, regarding policies and procedures and protocols regarding the inspection, maintenance and repair of the shelving and display units *situated in Defendants' retail store which is the subject of this litigation,* from testifying, claiming her testimony is irrelevant because it is not pertinent to the subject of this litigation. This is not a best practice. Or maybe it is.

    So here we are given to pause to ponder because these are sophisticated litigators who are very aware of best practices. Was Diane Spence, the operations manager at Marshalls at the time, swapped out as the designee for the store manager of the combo store at the time because the combo store manager had pertinent information, some of which was damaging to the Defendants? Or was she swapped out for the operations manager of the HomeGoods store for that

reason? And would a swap out have been a best practice under these circumstances? After all, you were given the freedom to choose a designee rather than needing to file a Motion For A Protective Order, as you would have needed to do if there had been specific notice to depose all managers and assistant managers for all stores regardless of the make and model that occupied the premises. And, even if the swap out would have been a best practice, would it have been ethical? These questions are inevitable when, as a litigator, you take this parsed approach of playing with semantics during discovery. And this approach, when it becomes your modus operandi in the long term, undermines your credibility with other litigators and with the Court. Some practitioners are comfortable with that undermined credibility as a cost of doing "business" because the ends justify the means in the zealous pursuit of "winning." That inevitably happens when "profession" becomes "business", and "justice" and "representation" become "winning" at all costs. The lines blur. Ethics become muddled and choices not easy. But in a real sense these choices will determine who you will be as a professional apart from the distinctly separate issue of who you are, what you will become, and how you will be seen as a result of your financial "success" and your philanthropies. Better though the muddled, the difficult, the working through of ethics in the chaotic, stressful arena of tit for tat than listening to the sanitized

versions delivered in mellifluous tones from on high, gilded conference rooms and in bound materials containing vacuous packets of platitudes.

With breezy, cavalier magnanimity, Defendants, in their response to the motion *in limine* to preclude this still unnamed representative from testifying, offer to have the still unnamed deposed and that makes it all good. No harm, no foul. Yet, this magnanimity comes at the expense of the Court's side of the balance sheet and the Plaintiff at this stage in the litigation. The case is trial ready, and it is prejudicial to open it up now because it not only rewards the obfuscation that has taken place, it opens the record back up requiring additional time, costs, supplements to pre-trial material, expert opinion material, and who knows at this point what other motions to supplement the record.

The motion *in limine* is, therefore, granted as to the to the still unnamed corporate representative. Indeed, the whole response is a canard when it claims that Plaintiff did no discovery regarding HomeGoods. That parses this litigation out beyond recognition. The discovery was always targeted at a precise location on the Miramaxx's MarshallsHomeGood premises controlled by and maintained by Miramax and it is clear that Miramaxx decided to be clever because of how the case was styled and ignore the substance and the reality of the situation, which was not a secret to anyone.

Defendants will be allowed to have the unnamed representative at trial waiting in the wings, and will be allowed to testify should the Plaintiff make representations as to the absence of a representative from HomeGoods.  However, the unnamed representative and the individual's position with the store and store location of employment on the date of the accident must be identified within fourteen (14) days of this order.  Plaintiff may call that individual as part of its case as of cross if it decides to do so.  No deposition will be permitted.  Plaintiff may call Diane Spence as of cross as "one who works for" defendant Miramaxx if it chooses to do so.